UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CATHERINE KOLCZYNSKI,
         Plaintiff,

-vs-                                Case No. 6:04-cv-716-Orl-18KRS

UNITED SPACE ALLIANCE, LLC,
LOCKHEED MARTIN CORPORATION,
THE BOEING COMPANY,
         Defendants.

## ORDER

THIS CAUSE comes before the Court upon Defendant's motion for summary judgment by United Space Alliance, LLC (Doc. 32, filed July 1, 2005), to which Plaintiff responded in opposition. (Doc. 36, filed July 29, 2005). Plaintiff Catherine Kolczynski ("Plaintiff" or "Kolczynski") brings this action against her former employer United Space Alliance, LLC ("USA") and against Lockheed Martin Corporation ("Lockheed Martin") and The Boeing Company ("Boeing"), the parent companies of USA (collectively, "Defendants"), asserting a total of six Counts under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1983 ("Section 1983"), as well as state law tort claims of negligent supervision and negligent training.[1] The Court grants USA's motion for summary judgment.

---

[1] This Court previously granted summary judgment in favor of Defendants Lockheed Martin and Boeing on all six Counts.

## I. BACKGROUND

Plaintiff, a white female, was employed as a Planner with Defendant USA in the Production Control Department of the Solid Rocket Boosters ("SRB") Element at Kennedy Space Center ("KSC"). Specifically, Plaintiff worked in the Assembly and Refurbishment Facility ("ARF"). From October 1999 until her resignation, Plaintiff's direct supervisor in Production Control was Kenneth Way ("Way"), Manager of Production Control. Way oversaw all of Production Control, including the ARF and another facility in Production Control, Hangar AF.

On December 17, 2003, Way informed Plaintiff that he was transferring her to Hangar AF. Plaintiff expressed her objections to the transfer because Hangar AF was farther away from KSC's day care facility, where her newborn daughter would soon be in child care. Plaintiff had been scheduled to go on vacation for the holiday season beginning December 18, 2003. Following her meeting with Way, she requested, and Way granted her vacation beginning one day early, on December 17, 2003. On December 23, 2003, Plaintiff emailed Carol Gerlach ("Gerlach), a USA Employee Relationships representative, and requested that Gerlach contact her. Gerlach, due to the death of her father, did not respond to the email until January 5, 2004. Upon hearing of Plaintiff's complaints of the assignment to Hangar AF and that Plaintiff would be filing a charge with the United States Equal Employment Opportunity Commission ("EEOC"), Gerlach attempted to schedule a meeting in person with Plaintiff on January 12, 2004. On January 14, 2004, without attending a meeting with Gerlach regarding her transfer, Plaintiff emailed Gerlach a notification of

resignation. Plaintiff subsequently filed charges with the EEOC, asserting claims of discrimination, retaliation, and hostile work environment based on sex and pregnancy. She received a notice on April 20, 2004 of a right to sue from the EEOC. Plaintiff filed her Complaint against Defendants on May 24, 2004.

## II. DISCUSSION

### A. Summary Judgment Standard

A court will grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see, e.g., Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1329 (M.D. Fla. 1999). Material facts are those that may affect the outcome of the case under the applicable substantive law. Disputed issues of material fact preclude the entry of summary judgment, but factual disputes that are irrelevant or unnecessary do not. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 324-25 (1986). In determining whether the moving party has satisfied its burden, the Court considers all inferences drawn from the underlying facts in a light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The moving party may rely solely on his pleadings to satisfy its burden. Celotex, 477 U.S. at 323-24. A non-moving party bearing the burden of proof,

however, must go beyond the pleadings and submit affidavits, depositions, answers to interrogatories, or admissions that designate specific facts indicating there is a genuine issue for trial. Id. at 324. If the evidence offered by the non-moving party is merely colorable, or is not significantly probative, the Court may grant summary judgment. Anderson, 477 U.S. at 249-50. Similarly, summary judgment is mandated against a party who fails to prove an essential element of its case. Celotex, 477 U.S. at 322.

*B. Count I: Disparate Treatment under Title VII and Section 1981*

Plaintiff claims that she "suffered disparate treatment in the terms and conditions of her employment from being reassigned . . . based upon her sex." (Compl. ¶ 30) Absent direct evidence of discrimination, Plaintiff may prove intentional discrimination through the familiar McDonnell Douglas three-step burden-shifting framework. See McDonnell Douglas Corp. v. Green, 411 U.S. 802 (1973); see also Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). In order to establish a Title VII disparate treatment claim under the rubric of McDonnell Douglas, a plaintiff must prove: "(1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated employees who are not members of the plaintiff's class more favorably; and (4) she was qualified for the job or job benefit at issue." Rice-Lamar v. City of Ft. Lauderdale, 232 F.3d 836, 842-43 (11th Cir. 2000) (citing Holifield v. Reno, 115 F.3d 1555, 1561-62 (11th Cir. 1997)). If the plaintiff establishes a *prima facie* case, then the burden shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the [adverse employment action]." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1258

(11th Cir. 2001). The plaintiff must then demonstrate to the court that the defendant's proffered reason for the employment action was merely pretext for the action, i.e., that the proffered reason was not the true reason for the employment action. Id. at 1258 n.16. "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant's articulated reasons is pretextual, the [defendant] is entitled to summary judgment." McShane v. Gonzales, No. 04-14960, 2005 U.S. App. LEXIS 15924, at *23-24 (11th Cir. Aug. 1, 2005) (quoting Chapman v. AI Transport, 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

Plaintiff must first establish a *prima facie* case. Plaintiff, as a woman, is clearly a member of a protected class, and therefore satisfies the first element of a Title VII disparate treatment claim. Plaintiff, however, was not subject to an adverse employment action. To prove an adverse employment action, the employee must show "a *serious and material* change in the terms, conditions, and privileges of employment. . . . as viewed by a reasonable person in the circumstances." Davis v. Town of Lake Park, 245 F.3d 1232, 1239 (11th Cir. 2001). Plaintiff claims that the reassignment to Hangar AF would be a "demotion" because she would no longer be working hand-in-hand with her fellow Planner, Maureen Powers ("Powers"), and because the Hangar AF position was "without the same opportunities as she had in her previous job." (Compl. ¶ 30.) From an objective viewpoint, however, the transfer to Hangar AF was nothing more than a lateral move. See Davis, 245 F.3d at 1239 ("[T]he employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as

viewed by a reasonable person in the circumstances."). Plaintiff, had she reported to the new position, would have retained her title, salary, benefits, and work schedule. (Doc. 32 at 6.) Plaintiff would have retained all of the fringe benefits of her position, including the ability to have her daughter at the company's day care facility. (Doc. 32 at 6.) Indeed, in addition to maintaining her normal Planner duties, Plaintiff also would have received training on an additional management software program (MAXIMO), thereby potentially furthering her versatility within USA. (Doc. 32 at 10.) Plaintiff alleges that the transfer to Hangar AF would have "obviate[d] [her] training" and would have "dramatically underutilize[d] [her] skills and seriously hinder[ed] [her] potential for advancement." (Kolczynski Aff. ¶ 4.) Plaintiff acknowledges, however, that she did not visit Hangar AF to see what the work environment was like, nor did she speak to anyone at Hangar AF to determine what kind of specific work she would be doing. (Kolczynski Dep. 58-60.) Plaintiff also acknowledges that she had previously worked with and gotten along with the individual who would have been her direct supervisor at Hangar AF, Randy Calloway. (Kolczynski Dep. 58.) Based on these facts, this kind of lateral transfer does not rise to the "*serious and material* change" required to have an adverse employment action. See Davis, 245 F.3d at 1239; see also Gupta v. Fla. Bd. of Regents, 212 F.3d 571, 588 (11th Cir. 2000) (holding that none of the complained-of actions were "objectively serious and tangible enough" to alter the plaintiff's "compensation, terms, conditions, or privileges of employment, deprive . . . her of employment opportunities or adversely affect[] . . . her status as an employee") (quoting Robinson v. City of Pittsburgh, 120 F.3d 1286, 1300 (3d Cir. 1997)).

Plaintiff also claims that Way's denial of her request for thirty days of unpaid leave amounts to an adverse employment action. (Doc. 36 at ¶ 9.) Plaintiff received twelve weeks of paid Family and Medical Leave time due to her pregnancy. (Doc. 32 at 4.) This leave was extended on two occasions until Plaintiff received her doctor's permission to return to work. (Kolczynski Dep. 109.) Plaintiff requested thirty days of additional unpaid leave following her pregnancy in order for Plaintiff to spend more time with her newborn child. (Kolczynski Dep. 107-110.) Plaintiff alleges that the denial was illegal discrimination based on her pregnancy. (Doc. 36 at ¶ 9.) Plaintiff's disappointment in the denial of leave does not mean that Way's business decision amounts to an adverse employment action. See Bass v. Bd. of County. Comm'rs, 256 F.3d 1095, 1118 (11th Cir. 2001) ("[N]ot everything that makes an employee unhappy is an actionable adverse action."). Consequently, the Court does not view Way's supervisory decision to deny a discretionary vacation period in this instance as an adverse employment action. Because Plaintiff fails to show an adverse employment action, she fails to establish a *prima facie* case.

Furthermore, Plaintiff must show that she was treated differently from co-workers that were "similarly situated." Rice-Lamar, 232 F.3d at 842; see Jones v. Bessemer Carraway Med. Ctr., 137 F.3d 1306, 1311 n.6 (11th Cir. 1998) ("The plaintiff must also point to someone similarly situated (but outside the protected class) . . . who was, in fact, treated better."). The purpose of this requirement is to "prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges"—therefore the

-7-

situations must be "nearly identical." Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1259 (11th Cir. 2001).

In this case, Plaintiff compares apples to oranges. Plaintiff contends that five different USA employees qualified as "similarly situated" employees. Not one of the five employees, however, was supervised by Way (meaning that Way was not the decision-maker in granting any leave). (Doc. 32 at 16.) See Jones v. Gerwens, 874 F.2d 1534, 1541 (11th Cir. 1989) ("[M]easures undertaken by different supervisors may not be comparable for purposes of Title VII analysis."); see also Rojas v. Florida, 285 F.3d 1339 (11th Cir. 2002) ("Different supervisors may impose different standards of behavior."). Additionally, not one of the five employees was a Planner or worked in the Production Control Department. (Doc. 32 at 16.) Therefore, each employee held different responsibilities. See MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 n.16 (11th Cir. 1991) ("In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics.") Finally, not one of the five employees was granted unpaid leave in excess of eight days. (Doc. 32 at 15-16.) Way has never approved a discretionary 30 days of unpaid leave for any employee, regardless of their situation, in his management history. (Doc. 32 at 15.) Plaintiff fails to show, therefore, that a similarly treated employee received favorable treatment. Holifield v. Reno, 115 F.3d 1555, 1563 (11th Cir. 1997).

Even if Plaintiff established a *prima facie* case, Defendant USA proffered a nondiscriminatory reason for the transfer of Plaintiff to Hangar AF. USA transferred Plaintiff because USA desired to have another Planner at Hangar AF, and Plaintiff was

chosen because of her lack of seniority at the ARF. (Doc. 32 at 5.) Under the <u>McDonnell Douglas</u> burden-shifting framework, Plaintiff must offer sufficient evidence to show an issue of material fact as to Defendant's explanation. See <u>Ledbetter v. Goodyear Tire & Rubber Co.</u>, No. 03-15264, 2005 U.S. App. LEXIS 18026, at *46 (11th Cir. Aug. 23, 2005) ("The question becomes whether 'the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'") (quoting <u>Combs v. Plantation Patterns, Meadowcraft, Inc.</u>, 106 F.3d 1519, 1538 (11th Cir. 1997)). "If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." <u>Chapman v. AI Transp.</u>, 229 F.3d 1012, 1024-25 (11th Cir. 2000).

Plaintiff argues that pretext is shown by USA's delay in carrying through with its intention of adding a new Planner in Hangar AF. (Doc. 36 at ¶ 29.) Plaintiff specifically contends that "[d]espite the alleged need that forms the basis of Defendant's justification defense, Way did not place any Planner at Hangar AF until almost a year after Plaintiff was constructively terminated." (Doc. 36 at ¶ 29.) In fact, Dave Taylor was hired in March 2004 to fill the Planner position at Hangar AF. (Way Decl. ¶ 27.) This was only a three-month delay after Plaintiff's resignation. Way testified at his deposition that one of the reasons for this three-month delay was the lack of an open requisition for the position at Hangar AF. (Way Dep. 124-25.) Plaintiff does no more than question the business judgment of

Defendant USA and Way, and fails to carry the burden of showing that Defendant USA's proffered reason was pretextual. "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer." Id. at 1030; see also Pennington v. City of Huntsville, 261 F.3d 1262, 1267 (11th Cir. 2001) ("[A] plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer.") (citation omitted); Combs, 106 F.3d at 1543 ("[F]ederal courts do not sit to second-guess the business judgment of employers."). Thus, even if Plaintiff had succeeded in showing a *prima facie* case, her claim for disparate treatment fails.

Plaintiff also alleges a Section 1981 violation in Count I. Section 1981 claims are viewed in the same way as Title VII claims when determining the existence of a *prima facie* case. Sledge v. Goodyear Dunlop Tires N. Am., Ltd., 275 F.3d 1014, 1015 n.1 (11th Cir. 2001). Because Plaintiff failed to show an adverse employment action and a similarly situated employee who was treated more favorably, Plaintiff fails to establish a *prima facie* case and her Section 1981 claim fails.[2]

---

[2] In addition, Section 1981 claims are reserved for racial discrimination. 42 U.S.C. § 1981(a) (stating that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . . . as is enjoyed by *white* citizens") (emphasis added); see also Hall v. Ala. Ass'n of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir. 2003). Plaintiff alleges in her Affidavit that she was discriminated against based on the "race of [her] unborn child." (Kolczynski Aff. ¶ 2.) However, Plaintiff alleges no supporting evidence of any racial discrimination on the part of Way or USA. Plaintiff's Section 1981 claim fails for this reason as well.

*C. Count II: Retaliation under Title VII*

Plaintiff claims that Defendant USA, through its employee, Way, took adverse employment actions against Plaintiff in retaliation for her participation in an EEOC investigation regarding Way's actions. (Compl. ¶¶ 43-50.) In order to establish a Title VII retaliation claim, the plaintiff must prove the following elements: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse employment decision." Gupta, 212 F.3d at 587. Just as with the disparate treatment claim in Count I, the McDonnell Douglas three-step burden-shifting framework applies. Again, Plaintiff fails to establish a *prima facie* case because the transfer does not constitute an adverse employment action. Furthermore, Plaintiff fails to show that Defendant USA's business reason for the transfer to Hangar AF was pretextual. Defendant USA is entitled to summary judgment on Count II.

*D. Count III: Equal Rights Violation under Section 1981 and Section 1983*

Plaintiff claims that Defendant USA denied her the "right to make and enforce employment contracts . . . as is enjoyed by . . . males." (Compl. ¶ 53.) Plaintiff places this claim in the guise of both a Section 1981 and Section 1983 equal protection claim. However, Plaintiff fails to meet the most rudimentary requirements for either Section 1981 or Section 1983.

Section 1981 claims are reserved for racial discrimination. 42 U.S.C. § 1981(a) (stating that "[a]ll persons . . . shall have the same right . . . to make and enforce contracts . .

. as is enjoyed by white citizens"). "It is well-established that section 1981 is concerned with *racial* discrimination in the making and enforcement of contracts." Little v. United Techs., Carrier Transicold Div., 103 F.3d 956, 961 (11th Cir. 1997). The basis for Count III is gender discrimination, not racial discrimination. Plaintiff fails to allege any racial discrimination on the part of Defendant USA.[3]

Similarly, Section 1983 claims are reserved for the purpose of remedying an injustice perpetrated "under the color of state law." 42 U.S.C. § 1983. "To state a claim for relief in an action brought under § 1983, [Plaintiff] must establish that [she was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999). Furthermore, this "excludes from [Section 1983's] reach 'merely private conduct, no matter how discriminatory or wrongful.'" Id. at 50 (quoting Blum v. Yaretsky, 457 U.S. 991, 1002 (1982)).

Defendant USA is the prime contractor to the National Aeronautics and Space Administration ("NASA") for the Space Shuttle Program. (Doc. 32 at 3.) Despite this fact, USA does not qualify as a state actor. "Acts of such private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." Rendell-Baker v. Kohn, 457 U.S. 830, 841 (1982); see also Langston v. ACT, 890 F.2d 380, 384 (11th Cir. 1989) ("[A] mere showing that a private person performs

---

[3] Again, the Court notes that Plaintiff claims in her Affidavit that Way discriminated against her "due to the race of [her] unborn child." (Kolczynski Aff. ¶ 2.) However, Plaintiff fails to allege supporting facts for this claim, nor facts to show a racially discriminatory animus on the part of USA.

a public function is not enough to establish state action."): Kelleher v. Pall Aeropower Corp., No. 8:00-cv-365-T-26EAJ, 2001 U.S. Dist. LEXIS 5463, at *23 (M.D. Fla. Feb. 9, 2001) ("The fact that an entity contracts with the government does not establish state action."). Plaintiff bases her Section 1983 claim solely on private employment actions without any reference to state action. Defendant USA is entitled to summary judgment on Count III.

*E. Count IV: Hostile Work Environment under Title VII and Section 1981*

Plaintiff claims that Defendant USA "created, allowed, and condoned a working environment that a reasonable person would find . . . so severe and pervasive as to [result in a] discriminatorily abusive working environment." (Compl. ¶¶ 60-62.) A hostile work environment claim under Title VII requires an employee to establish the following elements: "(1) that he or she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment . . .; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable." Gupta, 212 F.3d at 582 (quoting Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 n.11 (11th Cir. 1999)). The fourth element is usually the most burdensome, and this remains true for Plaintiff in her present claim. See id. at 583 ("The fourth element . . . is the element that tests the mettle of most sexual harassment claims."). The purpose of requiring the plaintiff to prove "severe or

pervasive" harassment is to make Title VII something more than just a "general civility code." Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998); Gupta, 212 F.3d at 583.

Plaintiff alleges that the following incidents of harassment occurred: (1) the reassignment to Hangar AF; (2) a reduction in responsibilities for the Production Control Department's Vision Support Plan Board;[4] (3) Way's failure to respond to emails from Plaintiff;[5] (4) Way's remark that he was "happy to be a white man living in America";[6] (5) Way's remark to Plaintiff regarding whether she was planning on having more children;[7] (6) Way's denial of additional maternity leave; and (7) Way's comments to other employees that were overheard by Plaintiff.[8] As earlier noted, Plaintiff filed her charge of discrimination with the EEOC on December 18, 2003. By statute, incidents that occur 300 days or more prior to the date of Plaintiff's charge may not be included in her claim. 42 U.S.C. § 2000e-5(e); see AMTRAK v. Morgan, 536 U.S. 101, 113 (2002). Because Plaintiff alleges a hostile work environment, however, the Court can consider "the entire

---

[4] Plaintiff was the initial point of contact for her department for the Vision Support Plan Board. When Plaintiff was on maternity leave, another Planner, Kathy Greene, took on her responsibilities. (Way Decl. ¶ 33.)

[5] Plaintiff alleges that Way did not respond to two email requests, one for technical support and one requesting a day of unpaid leave. (Way Decl. ¶¶ 36-37.)

[6] Plaintiff also alleges that Way remarked: "White men in America have all the opportunities available to them." (Compl. ¶ 34.)

[7] Way's alleged comment to Plaintiff was: "You don't plan on having any more children, do you?" (Compl. ¶ 16.)

[8] These alleged sexual harassment comments were the basis of USA's internal investigation of Way, in which Plaintiff participated, and which she now claims is the basis of Way's retaliation against her. Plaintiff specifically alleges that Way asked a co-worker if "she swallowed," referring to an oral sex act. (Doc. 36 at ¶ 34.) Plaintiff also alleges that Way had closed door meetings with female subordinates in his office, which amounted to sexual harassment. (Doc. 36 at ¶ 35.)

scope of [the] claim, including behavior outside the statutory time period . . . so long as an act contributing to that hostile environment takes place within the statutory time period." Ledbetter v. Goodyear Tire & Rubber Co., No. 03-15264, 2005 U.S. App. LEXIS 18026, at *27 (11th Cir. Aug. 23, 2005) (quoting Morgan, 536 U.S. at 105). In determining whether the alleged discriminatory conduct is so severe or pervasive as to rise to the level of a hostile environment claim, a court looks at the following elements: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." Mendoza, 195 F.3d at 1246. Taking everything alleged by Plaintiff as true (a hostile environment claim is not viewed in light of the McDonnell Douglas burden-shifting framework), a *prima facie* case for hostile work environment is not met. The entirety of the conduct alleged by Plaintiff was neither frequent nor severe. Nor was the alleged conduct "physically threatening or humiliating." Finally, the Plaintiff fails to show that the conduct interfered with her job performance. Dealt with individually, none of the allegations arise to the level necessary to meet the "severe or pervasive" requirement for a hostile work environment claim:

(1) The reassignment to Hangar AF was addressed in *Section B*. The lateral transfer did not constitute an adverse employment action, and also does not qualify as sexual harassment in this instance.

(2) Plaintiff's loss of point-of-contact status for the Vision Support Plan Board does not rise to "severe or pervasive" conduct.

(3) Way did not respond to Plaintiff's emails directly, but did fulfill the actions requested in the emails. One email was a request for an unpaid day off, which was granted by Way. (Way Decl. ¶ 36.) The second email regarded a problem with Plaintiff's printer, which was fixed by Way (through the Information Technology Department at USA). (Way Decl. ¶ 37.)

(4) Way's remark about being a white man in America was made in the context of a staff meeting at Thanksgiving regarding discrimination issues in the United States. (Way Decl. ¶ 34.) Plaintiff fails to show that the comment was either directed at Plaintiff or that it was harassment based upon Plaintiff's sex.

(5) Way's alleged remark questioning whether Plaintiff was going to have more children similarly does not rise to the "severe or pervasive" threshold. A lack of sensitivity does not make for harassment. See Gupta, 212 F.3d at 583 (Title VII is more than just a "general civility code."). The alleged individual remark also is not "physically threatening or humiliating," nor is there any evidence that it interfered with Plaintiff's job performance. See Mendoza, 195 F.3d at 1246.

(6) Way's denial of additional maternity leave was addressed in *Section B*. The discretionary denial of unpaid leave in this instance does not rise to the level of sexual harassment.

(7) Way's alleged remarks to other employees also do not rise to the level of a sexual harassment claim. "Mere offensive utterance[s]" are not viewed by the Court as

discriminatory conduct that reaches the level necessary for a hostile environment claim. See Mendoza, 195 F.3d at 1246.

Plaintiff fails to show that Way's alleged remarks and actions rise to the level necessary to establish a hostile work environment. See Faragher, 524 U.S. at 787 ("The conduct must be extreme to amount to a change in the terms and conditions of employment."). As a result, Defendant USA is entitled to summary judgment on Count IV.

*F. Count V: Negligent Supervision under Florida Tort Law*

Plaintiff claims that Defendant USA "breached its duty to properly supervise" Way, and that this breach of duty was the proximate cause of Plaintiff's injuries. (Compl. ¶¶ 68-71.) "The underlying wrong allegedly committed by an employee in a negligent supervision or negligent training claim must be based on an injury resulting from a tort which is recognized under common law." Scelta v. Delicatessen Support Servs., 57 F. Supp. 2d 1327, 1348 (M.D. Fla. 1999). Florida does not recognize a common law cause of action for sexual harassment, which Plaintiff relies on in making her claim. See Ball v. Heilig-Meyers Furniture Co., 35 F. Supp. 2d 1371, 1375 (M.D. Fla. 1999) ("It is the clear trend of Florida courts to interpret [prior case law] as not creating the tort of sexual harassment."). As a result, Florida law does not recognize a common law cause of action for negligent supervision when it is based on the underlying claim of sexual harassment. See Scelta, 57 F. Supp. 2d at 1327; Vernon v. Med. Mgmt. Assoc. of Margate, Inc., 912 F. Supp. 1549, 1563-64 (S.D. Fla. 1996) (dismissing a plaintiff's claim for negligent retention and negligent supervision because the underlying misconduct alleged, in the portion of the complaint that

sought relief for negligent supervision or retention, was sexual harassment). USA is therefore entitled to summary judgment on Count V.

*G. Count VI: Negligent Training under Florida Tort Law*

Plaintiff claims that Defendant USA "breached its duty to properly train" Way, and that this breach of duty was the proximate cause of Plaintiff's injuries. (Compl. ¶¶ 75-78.) As outlined in *Section F*, Florida does not recognize a common law cause of action based on the underlying tort of sexual harassment. See Scelta, 57 F. Supp. 2d at 1327. Defendant USA is therefore entitled to summary judgment on Count VI.

## III. CONCLUSION

Defendant's motion for summary judgment (Doc. 32, filed July 1, 2005) is accordingly **GRANTED**. All other pending motions are **DENIED** as moot. The Clerk of the Court is directed to **ENTER JUDGMENT** on behalf of Defendant United Space Alliance, LLC, and **CLOSE THE CASE**.

**DONE and ORDERED** in Orlando, Florida on this _27th_ day of September, 2005.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties